RENDERED: FEBRUARY 14, 2019
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2017-SC-000567-MR

**JOHN DANIEL CLARK**                                                              **APPELLANT**

V.
ON APPEAL FROM GREENUP CIRCUIT COURT
HONORABLE ROBERT B. CONLEY, JUDGE
NO. 16-CR-00003

**COMMONWEALTH OF KENTUCKY**                                              **APPELLEE**

### OPINION OF THE COURT BY CHIEF JUSTICE MINTON

### AFFIRMING

A circuit court jury found John Daniel Clark ("JD") guilty of murder and two counts of tampering with physical evidence. The jury recommended a sentence of 35 years' imprisonment, which the trial court adopted, entering judgment accordingly. JD now appeals the judgment as a matter of right,[1] raising several issues for review. Finding no reversible error, we affirm the judgment.

---

[1] *See* Ky. Const. § 110(2)(b) ("Appeals from a judgment of the Circuit Court imposing a sentence of . . . imprisonment for twenty years or more shall be taken directly to the Supreme Court.").

# I. BACKGROUND.

Various individuals gathered at the residence of Johnny Bill Clark ("JB"). Among them were JB, appellant JD (JB's son), Todd Anthony Rowe (the deceased victim), Samantha Clare (JD's sister and Rowe's girlfriend), and Darrell Travis Goble.

Earlier that same day, Samantha Clare and Goble were talking inside Goble's residence when JD arrived and asked Samantha Clare to step outside to speak with him. Goble testified that as they returned, he heard JD say, "I'm going to kill him," but Goble did not know to whom JD was referring when he said this.

Later, Rowe invited Goble to JB's residence. While there listening to music with Samantha Clare, Goble looked up and saw JB straddling Rowe's back, apparently choking him. JD then approached JB and Rowe and shot Rowe.

Goble called 911 as he ran out of the residence. As he fled, he saw JD slide another shell into the shotgun. He then heard two more shots.

Samantha Clare confirmed that she heard JD say he was going to hurt "somebody," telling police that JD told her that if Rowe laid another hand on her, he was going to hurt Rowe. While at JB's residence, Samantha Clare remembered hearing a thud that caused her to turn and see JB and Rowe fighting on the floor and JB had Rowe in a headlock.

As Samantha Clare attempted to pull JB off Rowe, she saw JD coming down the hall with a shotgun. She testified that JD was frantic and screaming

2

at them to stop because they were hurting Samantha Clare. JD then aimed the shotgun and told Samantha Clare to get out of the way. JD then shot Rowe twice, first in his left side and then in the head.

Samantha Clare escaped the house and called 911, stating, "They killed my boyfriend. . . . Please help me before they shoot me." She also said, "They're trying to bury him and they're trying to burn him. Please help me. . . . They've been trying to get him outside the house."

Another witness, Rhonda Prince, testified that before the incident she had a conversation with JD and two other individuals about Rowe and Samantha Clare coming into town. One of the individuals commented that he was dreading it, to which JD stated, "It's O.K. We'll get him."

Law enforcement responding to the incident found JD at Prince's house. Upon detaining and interviewing JD, he initially denied any involvement in the crime. JD then changed his story, admitting that "there were a few things he was not completely honest about," but he never confessed to having pulled the trigger.

JD and JB were both charged with Rowe's murder and two counts of tampering with physical evidence. The jury found JD guilty of murder and two counts of tampering with physical evidence, recommending a total sentence of 35 years' imprisonment, which the trial court accepted, entering judgment accordingly.

## II. ANALYSIS.

### A. The trial court did not err when it denied JD's motions for directed verdict on the charges of tampering with physical evidence.

JD claims the trial court erred by denying his motions for directed verdict on the two tampering-with-physical-evidence charges. This issue is indisputably preserved for appellate review.

"On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for the jury to find guilt, only then is the defendant entitled to a directed verdict of acquittal."[2]

"A person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he . . . [d]estroys, mutilates, conceals, removes or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding[.]"[3]

JD's first charge of tampering with physical evidence stemmed from his alleged handling of Rowe's body after the shooting. When authorities arrived, they found Rowe's body outside the residence. Testimony from the examining coroner revealed that the body appeared to have been dragged over the threshold of the residence, as supported by scrape marks appearing on the back and buttocks of the body. Testimony from the doctor performing the autopsy revealed abrasions on the back that "could be" consistent with the

---

[2] *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991) (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3, 4–5 (Ky. 1983)).

[3] Kentucky Revised Statutes ("KRS") 524.100(1)(a).

dragging of the body across a surface. An investigating detective testified that it appeared Rowe's body had been dragged through patches of blood to the front door of the residence. Samantha Clare testified that she told the 911 dispatcher, "They're trying to bury [Rowe] and they're trying to burn [Rowe]. Please help me. . . . They've been trying to get [Rowe] outside the house."

Application of our "generally-applied, fundamental principle that a jury verdict may properly be based upon reasonable inferences drawn from the evidence"[4] requires upholding the trial court's denial of JD's motion for directed verdict. "A jury is entitled to draw all reasonable inferences from the evidence[.]"[5] "The jury is instructed to reach its verdict 'from the evidence;' and if there [is] competent and relevant evidence affording a reasonable and logical inference or conclusion of a definite fact, this court will not invade the jury's province to weigh conflicting evidence, judge the credibility of witnesses and draw the ultimate conclusion."[6]

We reject JD's argument that insufficient evidence existed to convict him of tampering with physical evidence by moving Rowe's body. Testimony from Goble and Samantha Clare established that JD shot Rowe inside the residence and that JD remained inside the residence for a period after Goble and Samantha Clare ran outside. Two lab reports proved the presence of blood on JD's clothing, shoes, and hands. Testimony from three individuals established

---

[4] *Moore v. Commonwealth*, 462 S.W.3d 378, 388 (Ky. 2015).

[5] *Toler v. Sud—Chemie, Inc.*, 458 S.W.3d 276, 287 (Ky. 2014).

[6] *Beatrice Foods Co. v. Chatham*, 371 S.W.2d 17, 19 (Ky. 1963).

5

the dragging of Rowe's body from inside the residence to outside the residence. Finally, in the minutes after the shooting, Samantha Clare told 911 dispatchers that "they" were attempting to burn and bury Rowe.

Putting all this testimony together, the jury could logically conclude that JD, the individual who shot Rowe, intended to remove Rowe's body from the scene to avoid criminal liability. And, possessing this intent, JD altered the state of Rowe's body by changing its condition and removing it from its original location—dragging the body from inside the residence to the outside, producing the abrasions and scrapes found on the body. The trial court did not err in denying JD's motion for a directed verdict on this charge.

JD's second evidence-tampering charge stemmed from the apparent attempted cleanup of Rowe's blood from surfaces inside the residence. An investigating detective testified to seeing bloody smears on the countertop and floor and rags and a white towel soaked in blood, all evidence of an attempt to wipe traces of Rowe's blood. The detective testified that he found a jug of bleach on the kitchen countertop, although he admitted that he could not detect any odor of bleach inside the residence. Finally, Prince testified that, upon arrival at her house, JD asked her if he could wash his hands, which she noticed had blood on them.

Considering this testimony and the other evidence presented, the jury could have reasonably believed that JD intended to wipe away traces of blood from the residence to avoid criminal liability. In effectuating this intent, the removal of some of the blood from the floor with rags and a towel altered the

condition of the crime scene. The trial court did not err in denying JD's motion for a directed verdict on this evidence-tampering charge.

## B. No reversible error occurred from the trial court's jury instructions on protection of another.

JD argues that the trial court committed reversible error by improperly instructing the jury on his protection of another defense. The Commonwealth disputes the preservation of this issue, but the Commonwealth's preservation argument does not require fuller analysis here because the trial court's error is harmless nonetheless.

The trial court agreed that the jury should be instructed on the full range of homicide crimes, including both perfect and the so-called imperfect protection of another defense. The evidentiary basis for the giving of perfect and imperfect protection of another instructions was JD's defense theory that he shot Rowe amid an affray between JB and Rowe to protect JB from being harmed by Rowe.

JD makes two arguments on this issue. First, he argues that the trial court misstated the law in its second-degree manslaughter and reckless homicide instructions. Second, he argues that the trial court's instructions did not allow the jury to consider fully the imperfect protection of another defense because the instructions did not comply with this Court's stated model instructions as embraced in *Commonwealth v. Hager*.[7]

---

[7] 41 S.W.3d 828 (Ky. 2001).

The Commonwealth concedes error in the trial court's jury instructions as to the second-degree manslaughter and reckless homicide instructions but insists that the trial court's error did not prejudice JD. We agree that the trial court's instructions on second-degree manslaughter and reckless homicide were erroneous, but we hold this error is harmless because it had no impact on the jury's verdict. We also hold that any purported error arising from the instruction's nonconformance with *Hager* is harmless.

To instruct the jury on the protection of another defense, JD tendered for the trial court's consideration a single jury instruction that contained both perfect and imperfect protection of another theories. He also tendered a murder instruction that incorporated the protection of another defense by requiring the jury, among the other requisite elements of the offense, to find that JD was not privileged to act in protection of another if the jury believed JD shot Rowe.

The instructions given by the trial court defined perfect protection of another followed by a murder instruction that mirrored the one tendered by JD. But the trial court incorporated imperfect protection of another into the second-degree manslaughter and reckless homicide instructions.

This Court in *Hager* offered specimen instructions for cases involving homicides and defenses like self-protection and protection of another.[8] The *Hager* instructions are ordered as follows: 1) murder, 2) first-degree

---

[8] *Id.* at 844–47. The specific specimen instructions discussed self-protection, but this distinction is immaterial because protection of another would be instructed in the same format.

8

manslaughter, 3) second-degree manslaughter, 4) reckless homicide, and 5) protection of another incorporating both perfect and imperfect protection of another.[9] In every homicide instruction, the jury must find that the defendant "was not privileged to act in [protection of another]" in order to find the defendant guilty of that specific homicide crime.[10] In considering that element, the jury is then instructed on protection of another.[11] Within that instruction is the "Wanton or Reckless Belief Qualification," otherwise known as the imperfect protection of another defense.[12]

In this case, the trial court's instructions deviated from the suggested instructions in *Hager* in two respects. First, the jury was instructed on protection of another *before* any of the homicide crimes. In addition, instruction on imperfect protection of another was not included as a part of that instruction. Instead of instructing on both perfect and imperfect protection of another in the same instruction, the trial court incorporated the imperfect protection of another defense into its instructions on second-degree manslaughter and reckless homicide. The trial court's failure to include the imperfect protection of another defense in the same instruction as the perfect protect-of-another defense is the point that gives rise to JD's claim that the

---

[9] *Id.*

[10] *Id.*

[11] *Id.* at 846–47.

[12] *Id.*

jury was not fully instructed on all possible defenses.[13] We reject this claim of error.

In instructing the jury in this way, the trial court also purportedly gave incorrect instructions on second-degree manslaughter and reckless homicide, which is JD's second claim of error. This claim of error is based upon our holding in *Barker v. Commonwealth.*[14] Both parties agree that the trial court here committed the *Barker* error.

The *Barker* error can be stated simply: The instructions here, as in *Barker*, were erroneous because "[t]he instruction required the jury to find [the defendant] acted wantonly *and* had a wanton belief regarding the necessity of using physical force [in the protection of another]."[15] In other words, instead of instructing the jury on second-degree manslaughter correctly like this:

> You will find the Defendant guilty of Second-Degree Manslaughter under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all the following:
>
> A. That in this county on or about [DATE], and before the finding of the Indictment herein, he killed [DECEASED] by [MEANS];
>
> AND
>
> B. That in so doing he was acting wantonly *or as described in paragraph C.(2) of this instruction;*[16]

---

[13] This is exactly what happened in *Gribbins v. Commonwealth*, 483 S.W.3d 370, 373-76 (Ky. 2016), in the context of self-defense. This Court, however, explicitly outlined exactly why this situation does not actually constitute error at all. *Id.*

[14] 477 S.W.3d 583, 590-91 (Ky. 2015).

[15] *Id.* at 590–91 (emphasis in original).

[16] This emphasized portion was not included in the trial court's instructions in the case at hand.

AND

C. That in so doing:

   (1) He was not privileged to act in protection of another;

   OR

   (2) Though otherwise privileged to act in protection-of-another, the Defendant was mistaken in his belief that it was necessary to use physical force against [DECEASED] in protection-of-another, or in his belief in the degree of force necessary to protect [the person allegedly protected] and that when he killed [DECEASED], he was aware of and consciously disregarded a substantial and unjustifiable risk that he was mistaken in that belief, and that his disregard of that risk constituted a gross deviation from the standard of care that a reasonable person would have observed in the same situation;

the trial court instructed the jury incorrectly like this:

You will find the Defendant guilty of Second-Degree Manslaughter under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about January 9, 2016 and before the finding of the Indictment herein, he killed Todd Rowe by shooting him with a shotgun;

AND

B. That in so doing he was acting wantonly;

AND

C. That in so doing:

   (1) He was not privileged to act in protection-of-another;

   OR

   (2) Though otherwise privileged to act in protection-of-another, the Defendant was mistaken in his belief that it was necessary to use physical force against Todd Rowe in protection of another, or in his belief in the degree of force

11

necessary to protect Johnny Bill Clark and that when he killed Todd Rowe, he was aware of and consciously disregarded a substantial and unjustifiable risk that he was mistaken in that belief, and that his disregard of that risk constituted a gross deviation from the standard of care that a reasonable person would have observed in the same situation;

The failure to instruct in part B "or as described in paragraph C.(2) of this instruction" is the *Barker* error that directs the jury to find essentially two levels of wantonness (or in the case of reckless homicide, recklessness). As we explained in *Barker*, "[t]his is simply not a theory of conviction for second-degree manslaughter,"[17] nor is it a theory of conviction for reckless homicide. The trial court erred in this respect. But, as explained below, we can assuredly say that the trial court's *Barker* error and its purported *Hager* errors were both harmless.

"No error in . . . the admission . . . of evidence . . . is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order unless it appears to the court that the denial of such relief would be inconsistent with substantial justice."[18] "The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties."[19] "[A] nonconstitutional evidentiary error may be deemed harmless if the reviewing court can say with fair assurance that the judgment was not substantially

---

[17] *Id.* at 591.

[18] Kentucky Rules of Criminal Procedure ("RCr") 9.24.

[19] *Id.*

swayed by the error."[20] "[T]he inquiry is not simply 'whether there was enough [evidence] to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."[21]

Under both JD's tendered instructions and the trial court's instructions, to convict JD of Rowe's murder, as the jury ultimately did, the jury had to be satisfied from the evidence beyond a reasonable doubt that JD "was not privileged to act in protection of another." The jury's verdict is clear the jurors did not believe JD's protection of another defense.

As the trial court's jury instructions reflected, the protection of another defense when deadly force is used requires the satisfaction of three basic elements to apply "perfectly" to bar to any homicide conviction: 1) the defendant believed that the victim was about to use physical force against another; 2) the defendant believed that it was necessary to use deadly physical force in order to protect the other person from the victim; and 3) "[u]nder the circumstances as they actually exist, the person whom he seeks to protect would himself have been justified under KRS 503.050 and 503.060 in using such protection."[22] The protection of another defense applies imperfectly when

---

[20] *Murray v. Commonwealth*, 399 S.W.3d 398, 404 (Ky. 2013) (citing *Kotteakos v. United States*, 328 U.S. 750 (1946)).

[21] *Murray*, 299 S.W.3d at 404 (quoting *Kotteakos*, 328 U.S. at 765).

[22] *See* KRS 503.070(2).

13

the jury finds that the defendant's belief as to elements 1) and 2) was either wanton or reckless.[23]

To find JD guilty of murder, the jury instructions required the jury to find that JD "was not privileged to act in protection of another." To find that JD "was not privileged to act in protection of another," the jury instructions required the jury to determine that perfect protection of another applied. By finding JD guilty of murder, thus rejecting application of the perfect protection of another defense, the jury found one or more of the elements of perfect protection of another to be unsatisfied by the evidence. We cannot know which one or ones. But this lack of specificity is of no consequence because the jury's explicit rejection of perfect protection of another is necessarily an implicit rejection of the application of imperfect protection of another.

The first element of perfect protection of another requires the jury to find that the defendant believed that the victim was about to use physical force against another, while the second element requires the jury to find that the defendant believed that it was necessary to use deadly physical force to protect the other from the victim. If the jury finds that the defendant did not believe either of these things, then the jury does not have to determine if the defendant erroneously held these nonexistent beliefs. By rejecting perfect protection of another on either of the first two elements, the jury necessarily rejects

---

[23] KRS 503.120(1).

14

application of imperfect protection of another, which requires an examination of the propriety of that belief.

But what if the jury that the first two elements of perfect protection of another are satisfied, but not the third element? This also necessarily rejects any application of imperfect protection of another because that third element must still be satisfied for imperfect protection of another to apply to mandate a second-degree manslaughter or reckless homicide conviction. In other words, the application of imperfect protection of another still requires satisfaction of the third element of perfect protection of another because that is an element of the defense in general under KRS 503.070(1)(b) and (2)(b).[24]

Imperfect protection of another is an exception to the exception—we only determine its application if perfect protection of another otherwise applies. Perfect protection of another negates the application of any homicide conviction.[25] Imperfect protection of another, on the other hand, applies to allow for a conviction of second-degree manslaughter or reckless homicide. Imperfect protection of another is seemingly a misnomer because it is a way for the Commonwealth to prosecute an individual for second-degree manslaughter

---

[24] If this were not the case, then defendants with valid beliefs as to the victim's imminent use of force and the necessity of the use of deadly physical force could be convicted of murder and first-degree manslaughter, but defendants with erroneous beliefs as to those elements would be automatically convicted of one of the lesser-included offenses of second-degree manslaughter or reckless homicide. It cannot be the case that the General Assembly intended to punish those with valid beliefs regarding the necessity of protecting another with deadly force more severely than those with wanton or reckless beliefs.

[25] *See Hager*, 41 S.W.3d at 843–44 (in the context of self-defense).

and reckless homicide even if the defendant had the necessary subjective beliefs required for the application of the perfect protection of another defense.

If a jury rejects the application of perfect protection of another, it need not consider the application of imperfect protection of another because the jury has already rejected the existence of the requisite mental state on the part of the defendant. So, although the trial court's instructions did not precisely conform to *Hager*, this nonconformance did not prejudice JD's case.[26] And by finding JD guilty of murder, the jury did not reach the second-degree manslaughter and reckless homicide instructions that contained the *Barker* errors. Any purported error on the part of the trial court in its jury instructions did not prejudice JD.

### C. The trial court did not err when it allowed the Commonwealth to introduce several photographs of Rowe's body.

JD argues that the trial court erred when it allowed the Commonwealth to introduce into evidence several photographs of Rowe's body. This issue is indisputably preserved for appellate review.

---

[26] Although JD has never explicitly said so, it appears that JD is arguing that if the jury were instructed on both perfect and imperfect protection of another at the same time, then the jury may rethink its determination that the defendant did not possess the requisite beliefs for application of the protection of another defense. In other words, the jury may initially reject the idea that the defendant truly possessed the requisite beliefs but, upon reflection sparked by reading an instruction on imperfect protection of another, the jury may reconsider its belief and find that the defendant may have, in fact, possessed the requisite beliefs but that those beliefs were erroneous. We have rejected this argument before. And we do so again. *See, e.g., Gribbins*, 483 S.W.3d at 373–76; *Bryan v. Commonwealth*, 2015-SC-000467-MR, 2017 WL 1102825 (Ky. Mar. 23, 2017).

16

JD complains about the introduction at trial of seven crime-scene photographs of Rowe's body after the Commonwealth had already introduced fifteen photographs, some of which also depicted Rowe's body. JD challenges the admission of these photographs under Kentucky Rules of Evidence ("KRE") 401, 402, and 403.

"All relevant evidence is admissible, except as otherwise provided[.]"[27] "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[28] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."[29] "The inclusionary thrust of the law of evidence is powerful, unmistakable, and undeniable, one that strongly tilts outcomes toward admission of evidence rather than exclusion."[30] "The language of KRE 403 is carefully calculated to leave trial judges with extraordinary discretion in the application and use of [KRE 403]."[31] As Professor Lawson notes, the application of KRE 401, 402, and 403 "embraces

---

[27] Kentucky Rules of Evidence ("KRE") 402.

[28] KRE 401.

[29] KRE 403.

[30] Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 2.05[2][b] (5th ed. 2013) (citing *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1967)).

[31] Lawson, *supra* note 10, at § 2.15[2][b].

not just a tilt toward admission over exclusion but a very powerful tilt in that direction."[32]

"The standard of review on evidentiary issues is abuse of discretion."[33] "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[34]

JD acknowledges our rule that a photograph of a victim's body at a crime scene or autopsy is admissible.[35] And again we note the highly "inclusionary thrust" of evidence under the application of KRE 401, 402, and 403. Additionally, the trial court performed its gatekeeping role by examining each photograph individually and preventing the Commonwealth from using some of the photographs it sought to use.

The seven objected-to photographs evidence the nature of the crime, the crime's location, and the movement of Rowe's body from the inside to the outside of the residence. Whatever prejudicial or cumulative effect resulting from the admission of these photographs cannot outweigh, much less substantially outweigh, their probative value. "The general rule is that a photograph, otherwise admissible, does not become inadmissible simply because it is gruesome[.]"[36] Finally, the admission of the photographs here

---

[32] Lawson, *supra* note 10, at § 2.15[2][b].

[33] *Stansbury v. Commonwealth,* 454 S.W.3d 293, 297 (Ky. 2015) (citing *Clark v. Commonwealth,* 223 S.W.3d 90, 95 (Ky. 2007)).

[34] *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999).

[35] *Adkins v. Commonwealth,* 96 S.W.3d 779, 794 (Ky. 2003); *Funk v. Commonwealth,* 842 S.W.2d 476, 479 (Ky. 1992).

[36] *Funk,* 842 S.W.2d at 479 (citing *Gall v. Commonwealth,* 607 S.W.2d 97 (Ky. 1980)).

greatly differs from the admission of the photographs at issue in *Hall v.*

*Commonwealth.*[37]

We find no reason to call into question the trial court's decision to admit

these photographs.

## III.    CONCLUSION.

Finding no reversible error, we affirm the trial court's judgment.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter and Wright, JJ., sitting.

All concur.


COUNSEL FOR APPELLANT:

Emily Holt Rhorer
Assistant Public Defender


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Jeffery Allan Cross
Assistant Attorney General

---

[37] 468 S.W.3d 814, 823-27 (Ky. 2015) (reversible error in the admission of 28 gruesome photographs possessing very low probative value, as the photographs did not shed light on the resolution of a material dispute and "more than enough alternative evidence" existed to prove the same facts, in light of the Commonwealth's continued emphasis on them to arouse the emotion of the jury).