Steven PETTWAY, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

2013–SC–000548–MR

Supreme Court of Kentucky.

RENDERED: SEPTEMBER 24, 2015

Counsel for Appellant: Bruce P. Hackett, Chief Appellate Public Defender, James David Niehaus, Deputy Appellate Defender, Office of the Louisville Metro Public Defender, Advocacy Plaza, 717–719 West Jefferson Street, Louisville, Kentucky 40202.

Counsel for Appellee: Jack Conway, Attorney General, James Coleman Shackelford, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, 1024 Capital Center Drive, Frankfort, Kentucky 40601–8204.

## OPINION OF THE COURT BY JUSTICE NOBLE

The Appellant, Steven Pettway, was convicted of murder and intimidating a participant in the legal process after shooting and killing Troya Sheckles, and was sentenced to a total prison term of 55 years. He raises two issues on appeal: (1) whether he could be convicted of intimidating a participant in the legal process under KRS 524.040 for intentionally killing Sheckles, and (2) whether delayed disclosures of discovery material by the Commonwealth constituted arbitrary state action prohibited by Section 2 of the Kentucky Constitution warranting dismissal of the charges against him. Finding that the evidence of Sheckles's intentional murder does not support conviction on the intimidation-of-a-witness charge, but that there is no merit to his claim regarding delayed discovery, this Court affirms the murder conviction and sentence but reverses his conviction and sentence for intimidating a participant in the legal process.

### I. Background

Troya Sheckles was shot and killed in Shelby Park in Louisville around 7:30 p.m. on March 23, 2009. Several people saw the shooting, and they all gave largely consistent descriptions of the shooter as being a male in dark clothing with a bandana tied around his face.

Steven Pettway and codefendant Dejuan Hammond[1] were eventually charged with Sheckles's murder, as well as intimidating a participant in the legal process under KRS 524.040 and retaliating against a participant in the legal process under KRS 524.055.

The Commonwealth's theory of the case was that Pettway killed Sheckles at Dejuan Hammond's direction to prevent her from testifying in the upcoming murder trial of his younger brother, Lloyd Hammond. Sheckles had witnessed the killing of William Sawyers in her home in 2006 and had identified Lloyd Hammond as the killer. Pettway was friends with the Hammonds, and the then-sixteen-year-old Pettway looked up to the much older Dejuan Hammond as a sort of mentor. The Commonwealth's evidence showed, among other things, that Pettway and Dejuan Hammond knew Sheckles was the essential witness for the Commonwealth in Lloyd Hammond's upcoming murder trial and had stashed a 9–mm pistol (the same

---

1. Hammond was tried separately.

kind used in Sheckles's shooting) at a friend's house about a month before the murder. There was also testimony about numerous statements made by Pettway following the murder admitting that he had shot Sheckles so that she could not testify against Lloyd Hammond.

The jury ultimately convicted Pettway of murder and intimidating a participant in the legal process (but found him not guilty of the retaliation charge) and recommended a 50–year prison sentence for murder and five-year sentence for the intimidation conviction to run consecutively. The trial court sentenced him to a total of 55 years' imprisonment in accordance with the jury's recommendations.

Pettway now appeals to this Court as a matter of right. *See* Ky. Const. § 110(2)(b). Additional facts will be developed as necessary in the discussion below.

## II. Analysis

**A. Pettway cannot be convicted of intimidating a participant in the legal process based on the intentional murder.**

Pettway first claims that he could not be convicted of intimidating a participant in the legal process based on the intentional murder of Troya Sheckles.

There is no question, under the evidence, that Sheckles was intentionally killed; and there was more than sufficient evidence that Pettway was the killer. KRS 507.020(1)(a), the murder statute, requires that he have acted "[w]ith intent to cause the death of another person," and in doing so, "cause[d] the death of such person." This, in turn, requires the death to have been his "conscious objective." KRS 501.020(1). It is telling that he has not alleged that he was entitled to a directed verdict on this conviction.

On the other hand, the statute criminalizing intimidating a witness (among other

participants in the legal process), KRS 524.040, provides, in relevant part, the following:

(1) A person is guilty of intimidating a participant in the legal process when, by use of physical force or a threat directed to a person he believes to be a participant in the legal process, he or she:

(a) Influences, or attempts to influence, the testimony . . . of that person; [or]

. . .

(c) Induces or attempts to induce, that person to absent himself or herself from an official proceeding to which he has been legally summoned.

The language of KRS 524.040 makes clear that section is intended to criminalize only intimidating acts perpetrated with the intent to cause the participant in the legal process to behave in a certain proscribed way (e.g., alter testimony or fail to appear to testify). It criminalizes the use of physical force or a threat that "induces" a participant in the legal process to act a certain way or "influences" that person's testimony (or attempts to do so). To *induce* means "to lead or move by persuasion or influence." *Webster's II New College Dictionary* 565 (1995). Similarly, to *influence* means "[t]o cause a change in the character, thought or action of." *Id.* at 569. Both necessarily contemplate subsequent action by the intimidated person as a consequence of the perpetrator's intimidation.

In essence, this statute criminalizes harmful or threatening behavior intended to cause the victim herself to act in some way, specifically, to change her testimony or to absent herself from a trial or other proceeding completely. In other words, it is aimed at the use of duress and coercion to convince a witness to *choose* not to testify. Although that choice is not volun-

tary, being induced by harm or threat, it is nonetheless a choice.

■ But an actor cannot intentionally cause another person's death and, at the same time, cause that other person to also behave in a certain way or to make a choice. A dead person cannot act and cannot choose. *Preventing* a witness from testifying (by killing them) cannot also influence the witness's testimony or induce him not to testify. Obviously, killing someone under circumstances like those in this case is intended to prevent the person from testifying, but that conduct is not covered by KRS 524.040. Such conduct is not intended to change the witness's conduct (other than to make it cease to exist) in how the witness testifies or chooses not to testify.

■ In contrast, KRS 524.055 criminalizes retaliating against a participant in the legal process. A person is guilty of that crime

> when he or she engages or threatens to engage in conduct causing or intended to cause bodily injury . . . [to] a participant in the legal process or a person he or she believes *may be called* as a participant in the legal process in any official proceeding or because the person has participated in a legal proceeding. . . .

KRS 524.055(1) (emphasis added). Unlike intimidation under KRS 524.040, this offense does not require that the use of physical force or the threat be intended to induce the victim not to participate in the official proceeding or influence how the victim participates. Instead, the offense of retaliation requires only that the person being retaliated against either be, be expected to be, or already have been a participant in the legal process. Though retaliation is ordinarily thought of as occurring after the fact (e.g., after a witness has testified), the statute is drafted to cover violence against a person who has

not yet participated (e.g., has not yet testified), so long as the act is related to the person's participation in the legal process. KRS 524.055(3). Thus, a defendant would be guilty of retaliating against a participant in the legal process for intentionally shooting and killing someone who is expected to provide adverse testimony at an upcoming trial. But the jury here did not convict on this charge.

To justify the intimidation conviction in this case, the Commonwealth cites *Hatfield v. Commonwealth*, 250 S.W.3d 590 (Ky. 2008), which held that a defendant may be properly convicted of both criminal attempt to commit murder and intimidating a participant in the legal process. In *Hatfield,* this Court considered and rejected claims that the trial court erred in refusing to grant directed verdicts of acquittal on an attempted-murder charge and an intimidation charge. *See id.* at 596–98. The victim in that case survived a very severe beating by Hatfield and others, and the evidence showed that the victim of the beating had witnessed a murder by Hatfield's uncle. The question was whether there was sufficient evidence to sustain those convictions. In that regard, the Court correctly held that the evidence was sufficient to support finding that Hatfield had attempted to kill the victim and that the attack had been a means for intimidating her as a witness to the murder. In so holding, the Court aptly rejected Hatfield's argument that the evidence was unbelievable due to inconsistencies in testimony because such questions of credibility are properly left to the jury.

But *Hatfield* is distinguishable from this case because there the assailants were not successful in their attempted murder. The charges in that case were considered independently when deciding whether a directed verdict was required. A reasonable jury could have believed, in considering

the intimidation charge, that the beating was intended only to silence the witness. And, when considering the attempted murder charge, the jury could have believed that the assailants' intent was to kill. If anything, this suggests that the verdicts in that case were inconsistent because the two intents were mutually exclusive. *See* KRS 505.020(1)(b) ("When a single course of conduct of a defendant may establish the commission of more than one (1) offense, he may be prosecuted for each such offense. He may not, however, be convicted of more than one (1) offense when ... [i]nconsistent findings of fact are required to establish the commission of the offenses.").

*Hatfield,* however, does not stand for the proposition that a defendant can intentionally murder a potential witness and be convicted of intimidating that same witness under KRS 524.040. Killing a witness forecloses the possibility of influencing that witness's testimony or inducing the witness to absent herself from trial.

Instead, the appropriate charge is retaliating against a witness under KRS 524.055. Of course, Pettway was also charged with this offense, and it was properly presented to the jury. For whatever reason, the jury did not convict on this charge.

It was thus error in this case to allow the jury to consider the charge of intimidating a participant in the legal process because the evidence does not support finding that Pettway shot and killed Sheckles with the intent to "influence" her to alter her testimony in Lloyd Hammond's murder trial or to "induce" her not to testify.

■ This issue was not raised to the trial court below, and thus this Court reviews for palpable error under Criminal Rule 10.26. We will reverse an unpreserved error that affects a party's substan-

tial rights only upon determining that manifest injustice resulted from the error. RCr 10.26. "[T]he required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth,* 207 S.W.3d 1, 3 (Ky. 2006).

Since Pettway could not have been guilty of intimidating a witness under any view of the facts and evidence in this case, the error is clearly palpable and manifestly unjust, and his conviction on this charge must be reversed.

■ Pettway further argues that this requires reversing his murder conviction and sentence as well, but this error did not taint his murder conviction. The same proof was offered and admissible both as evidence supporting the Commonwealth's murder theory that Pettway killed Sheckles at Dejuan Hammond's request to prevent her from testifying at Hammond's brother's murder trial and, as noted above, as evidence of the charge of retaliating against a participant in the legal process. The fact that the jury could properly convict for murder under that evidence but not for intimidation of a witness does not change the applicability of that evidence to the murder charge.

Pettway's conviction and sentence for intimidating a participant in the legal process is therefore reversed.

**B. Discovery failures by the Commonwealth do not amount to arbitrary state action in violation of Section 2 of the Kentucky Constitution and do not entitle Pettway to dismissal of his indictment with prejudice.**

Pettway's other claim does not allege any error by the trial court. Instead, Pettway is arguing that this Court has the duty to exercise its "inherent supervisory

power" under Section 2 [2] of the Kentucky Constitution to remedy alleged arbitrary actions by the Commonwealth's attorneys in this case "by declaring that the rights of the state have been forfeited," *Reid v. Cowan,* 502 S.W.2d 41, 42 (Ky. 1973). Specifically, he asks this Court to find that the Commonwealth's failure to disclose discovery material until the second day of the first trial (which resulted in a mistrial for that exact failure) and subsequent failure to disclose additional material until a week before the second trial (as a result of which the trial court excluded the evidence under Criminal Rule 7.24(9) [3]) were arbitrary within the meaning of Section 2. And to remedy this supposed arbitrariness, he asks this Court to "enforce an estoppel to prosecute" him. In other words, he contends that he is entitled to have this Court dismiss his indictment with prejudice to remedy the two discovery violations.

The Commonwealth argues in response that the trial court acted properly under Criminal Rules 7.24 and 7.26; that the delayed disclosures did not amount to violations of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); [4] and that Pettway cannot demonstrate any prejudice resulting from the discovery violations. In his reply brief, however, Pettway states that the Commonwealth's argument is "premised on a misunderstanding of the claim." He then reiterates that his claim is instead an invocation of the Court's supervisory powers "to vindicate Section 2 by declaring a forfeiture [by the Commonwealth] in this case" as a result of the alleged arbitrarily delayed disclosures of discovery materials.

Specifically, Pettway is asking this Court to exercise its inherent supervisory powers and dismiss with prejudice all charges against him to vindicate the prohibition against arbitrary state action contained in Section 2 of the Kentucky Constitution.

■ As Pettway's argument at least implicitly concedes, he has no grounds on which to claim that the trial court's actions regarding the discovery violations by the Commonwealth below were error. The court granted his motion for a mistrial as a result of the first violation. Similarly, the trial court acted well within its discretion in declining to dismiss with prejudice the charges against Pettway following the second delayed disclosure. And the trial court ordered appropriate relief by excluding the belatedly disclosed evidence (potentially subject to a missing evidence instruction) when Pettway, going against the advice of trial counsel to seek a continuance, chose to proceed to trial despite the delayed disclosure. He, therefore, received all the relief to which he was entitled under Criminal Rules 7.24 and 7.26 and has no cause to complain further. *See* RCr 7.24(9).

---

2. "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." Ky. Const. § 2.

3. Criminal Rule 7.24(9) provides the following:

    If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or an order issued pursuant thereto, the court may direct such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as may be just under the circumstances.

4. "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87, 83 S.Ct. 1194.

Nevertheless, Pettway claims this extraordinary remedy is justified to cure the prosecution's allegedly arbitrary actions in inadvertently failing to timely turn over discovery materials (which, incidentally, have not been shown to contain any exculpatory evidence). Ironically, this would require the Court itself to act arbitrarily. Pettway has already received appropriate judicial remedies in the form of a mistrial and exclusion of evidence. To pile on would be nothing but arbitrary. And such action would raise significant separation-of-powers concerns. While we acknowledge the observation of Chief Justice Palmore that "[s]ometimes, as Holmes remarked, because the constable blundered the criminal must go free, that being the most effective method of helping the constable not to blunder the next time," *Reid v. Cowan*, 502 S.W.2d 41, 42 (Ky. 1973), this is not one of those times. There was no blunder that could not be appropriately addressed, as the trial court did here, under our rules of procedure. This claim has no merit.

### III. Conclusion

Because intentionally murdering a participant in the legal process cannot sustain a conviction for intimidating that participant, Pettway's conviction and sentence for intimidating a participant in the legal process must be reversed. His conviction and sentence for the murder of Troya Sheckles is affirmed, and this matter is remanded to the Jefferson Circuit Court for entry of a new judgment consistent with this opinion.

All sitting. All concur.