# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JUNE 16, 2016
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000269-MR

DEJUAN EARL HAMMOND      APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT

V.      HONORABLE ANGELA MCCORMICK BISIG, JUDGE
NO. 13-CR-003412

COMMONWEALTH OF KENTUCKY      APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING IN PART AND REVERSING IN PART

On the evening of March 23, 2009, Steven Pettway shot and killed Troya Sheckles in Shelby Park in Louisville, Kentucky. Pettway was tried and convicted by a Jefferson Circuit Court jury of murder and intimidating a participant in the legal process. In accordance with the jury's recommendation, the trial court sentenced him to a total of 55 years' imprisonment. On appeal, we determined that "Pettway could not have been guilty of intimidating a witness under any view of the facts and evidence in this case." *Pettway v. Commonwealth*, 470 S.W.3d 706, 710 (Ky. 2015); *see also* KRS 524.040. We held that this unpreserved error was palpable and required reversal of Pettway's intimidation conviction. *Id.* The murder conviction was affirmed.

Pettway's co-defendant was Dejuan Hammond (hereinafter "Appellant"). The two were tried separately. Similar to the case involving Pettway, the Commonwealth's theory against Appellant was that Pettway killed Sheckles at Appellant's direction to prevent her from testifying in the upcoming murder trial of Appellant's younger brother, Lloyd Hammond. It is undisputed that Sheckles was an essential eye witness in Lloyd's murder trial.

After multiple mistrials, Appellant was successfully tried and convicted by a Jefferson Circuit Court jury of complicity to murder and complicity to intimidating a participant in the legal process. After convicting Appellant of being a second-degree persistent felony offender, the jury sentenced him to 25 years' imprisonment for murder, and five years enhanced to 10 for intimidating a participant in the legal process. The sentences were ordered to run consecutively for a total sentence of 35 years' imprisonment. Appellant now appeals his judgment and sentence as a matter of right pursuant to § 110(2)(b) of the Kentucky Constitution. Three issues are addressed as follows. For the reasons stated herein, we reverse Appellant's conviction for intimidating a participant in a legal process, but affirm the murder conviction.

**Intimidating a Participant in a Legal Process**

Appellant's primary argument is that he could not be convicted of both intentional murder and intimidating a participant in a legal process. The statute at issue is KRS 524.040. It provides in relevant part:

> (1) A person is guilty of intimidating a participant in the legal process when, by use of physical force or a threat directed to a

2

person he believes to be a participant in the legal process, he or she:

(a) Influences, or attempts to influence, the testimony ... of that person; [or]

...

(c) Induces or attempts to induce, that person to absent himself or herself from an official proceeding to which he has been legally summoned.

Applying this statute in *Pettway*, we held that "[k]illing a witness forecloses the possibility of influencing that witness's testimony or inducing the witness to absent herself from trial." *Pettway*, 470 S.W.3d at 710. As previously stated, we reversed Pettway's intimidation conviction. The Commonwealth requests that we reconsider our previous holding in *Pettway* when applying that holding to the present case. We decline the invitation.

However, we will address the Commonwealth's argument that the present case is factually distinguishable from *Pettway*. The Commonwealth essentially argues that it presented evidence of Appellant's criminal conduct that occurred prior to Sheckles' murder and was entirely distinct from the act or complicity to murder. We will address this issue in the context of whether Appellant was entitled to a directed verdict.

To clarify, Appellant argued before the trial court that the Commonwealth failed to present sufficient evidence on the intimidation charge and that he was entitled to a directed verdict. The court denied Appellant's motion. Similar to the issue addressed in *Pettway*, Appellant's argument here

3

requires that we review the sufficiency of the evidence presented by the Commonwealth.

We will reverse the trial court's denial of a motion for directed verdict "if under the evidence as a whole, it would be *clearly unreasonable* for a jury to find guilt[.]" *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky. 1991) (citing *Commonwealth v. Sawhill,* 660 S.W.2d 3 (Ky. 1983) (emphasis added)). Our review is confined to the proof at trial and the statutory elements of the alleged offense. *Lawton v. Commonwealth,* 354 S.W.3d 565, 575 (Ky. 2011). The Commonwealth presents several items of evidence in support of its argument that Appellant was not entitled to a directed verdict and, therefore, that he was properly convicted of murder *and* intimidating a participant in a legal process.

First, the Commonwealth presented evidence at Appellant's trial that Sheckles was evading service at the time of Lloyd Hammond's scheduled trial date. The Commonwealth also contends that evidence indicated that Sheckles was not herself in the time leading up to that trial and did not want to attend family gatherings. However, the Commonwealth's citation to the record fails to confirm this latter claim.

Second, Lloyd's case was dismissed without prejudice after Sheckles could not be located. Because she was an indispensable eye witness, a warrant was issued for her arrest. After she was located, Lloyd was again indicted.

Third, Appellant visited his brother on three separate occasions in early 2009 and received jail phone calls from Lloyd in early March 2009. Prior to his

4

2009 visits, Appellant had not visited his brother in jail since 2007. The Commonwealth claims that the 2009 jail visit occurred one week before Lloyd's trial was scheduled to begin.

Fourth, there was testimony that Appellant voiced his intent to identify the witness, and help his younger brother, Lloyd, get out of jail. This evidence came from Prince Bolin, the brother of Appellant's former girlfriend, Princess Bolin. After Prince denied having any memory of speaking to the police about this matter, the Commonwealth introduced a recording of his statements to the police wherein he stated that Appellant told him that he had seen the victim, Sheckles, in the park and that Appellant voiced his intention to "take her." The Commonwealth also introduced Princess Bolin's prior statement to the police wherein she stated that she overheard Appellant speaking to Lloyd over the phone concerning Sheckles testifying at trial. Appellant told Lloyd not to worry and that everything would be taken care of. According to Princess, she also heard Appellant inform Lloyd that it had been "taken care of." This occurred two or three days after Sheckles' murder.

It would be clearly unreasonable for a jury to convict Appellant based on these four instances of evidence presented by the Commonwealth. More precisely, Sheckles' aversion to appearing as a key eye witness in a murder case is not entirely unique, and certainly not evidence from which jurors could reasonably convict Appellant of intimidating a participant in a legal process. And while the testimony that Appellant voiced his intent to "take care of it" and help his younger brother get out of jail may be sufficient evidence of his

5

intention to intimidate Sheckles, it fails to indicate that Appellant ever acted or attempted to act on his intent to intimidate a witness other than the murder itself. *See* KRS 524.040. Under our holding in *Pettway*, Appellant's complicity to Sheckles' murder cannot satisfy that requirement.

In addition to this evidence, the Commonwealth also cites an instance where Sheckles was ordered to appear at a pre-trial hearing in the murder case against Appellant's brother, Lloyd. Some additional background information is necessary.

As previously noted, Lloyd's murder indictment was dismissed without prejudice after the key witness, Sheckles, could not be located. Because she was an indispensable witness in Lloyd's case, a warrant was issued for her arrest. After she was located, Lloyd was again indicted. Sheckles was ordered to appear in court where she was sworn to appear at Lloyd's subsequent trial. Appellant was present in the court room gallery during that hearing.

Tom Coffey was a former Assistant Commonwealth's Attorney who was involved in the prosecution of Appellant's brother, Lloyd. Coffey testified at Appellant's trial. Prior to testifying, Coffey was informed of the trial court's ruling that Coffey could testify as to his observations of Sheckles' demeanor, but could not testify as to how Sheckles felt. Thereafter, Coffey testified that, during the hearing in which Appellant was present in the courtroom gallery, Sheckles was trembling and "had all the signs of someone who looked very, very, afraid." Defense counsel objected and the court admonished the jury that

a witness cannot state what someone else is feeling and to "disregard anything that's not in the category of something that could be observed."

We have previously recognized that "[g]enerally, a witness may not testify to the mental impressions of another." *See Young v. Commonwealth*, 50 S.W.3d 148, 170 (Ky. 2001) (citations omitted); *see also* KRE 701 and KRE 602. However, "[a]n exception occurs if the opinion is based on the witness's own factual observations or perceptions." Attorney Coffey's testimony was based on his own observation or perception of Sheckles' actions and reactions. *Young*, 50 S.W.3d at 170. Therefore, this evidence was admissible. Moreover, Appellant received the benefit of an admonition that the jury not consider any portion of Coffey's testimony that was based on anything other than Coffey's own observations. *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003) ("[a] jury is presumed to follow an admonition to disregard evidence and the admonition thus cures any error."). Two other witnesses also testified in a manner similar to Coffey.

Tom Van De Rostyne was a former Assistant Commonwealth's Attorney who had been intimately involved in Appellant's prosecution until he was removed from the case. The Jefferson County Commonwealth Attorney's office initiated an internal investigation into Van De Rostyne's handling of Appellant's case that will be discussed later in our analysis. For purposes of the present issue, it is only relevant that Van De Rostyne testified during Appellant's trial that Sheckles looked "terrified" at the hearing where she was ordered to appear prior to Lloyd Hammond's trial. To clarify, that was the same hearing where

7

Appellant was present in the court room gallery. Detective Roy Stalvey, also testified that he had been informed that "apparently [Sheckles] was nervous from a prior proceeding that she was in where she saw [Appellant] in the courtroom." This isolated comment occurred while Detective Stalvey was generally describing why he believed Sheckles' murder to be a targeted killing. Appellant failed to object to these statements by Van De Rostyne and Detective Stalvey.

Like Coffey's testimony, Van De Rostyne's statements were based on his own observation or perception of Sheckles' actions and reactions. Similarly, Detective Stalvey's statement concerned Sheckles' apparent nervousness. No error occurred here, and certainly no palpable error. RCr 10.26; *McCleery v. Commonwealth*, 410 S.W.3d 597, 606 (Ky. 2013) (we will not reverse unless "it can be determined that manifest injustice, i.e., a repugnant and intolerable outcome, resulted from that error.").

Even viewing Van De Rostyne and Coffey's disputed testimony as properly admitted, however, there was still insufficient evidence in this case to instruct the jury on the intimidation charge. The disputed testimony involves Appellant's presence in the courtroom gallery where he presumably had a right to be. The Commonwealth has not offered any evidence that the hearing at which Sheckles and Appellant were present was closed to the public. Therefore, when considering the evidence as a whole, it was clearly unreasonable for a jury to find guilt here. Accordingly, we reverse Appellant's conviction for intimidating a participant in a legal process.

8

## Discovery Violations

Next, Appellant argues that due to numerous discovery violations by the Commonwealth, "the court must employ its inherent supervisory power and its power under Section 2 of the Constitution to dismiss the indictment with prejudice . . . ." Appellant contends that the appropriate remedy here is dismissal of his indictment. We disagree.

Before the first trial date in this case, the charge was dismissed without prejudice because the Commonwealth's witnesses were unavailable. Appellant's second trial resulted in a mistrial when a complete copy of an investigative letter was not disclosed by the Commonwealth until the middle of trial. As such, Appellant moved to dismiss the case with prejudice. In support, Appellant argued that the investigative letter included the statement of a witness who provided an alibi for Appellant. The court denied the motion. Defense counsel subsequently discovered that the Commonwealth possessed additional discovery materials that had not been disclosed to the defense. In response, Appellant filed additional motions to dismiss which were denied by the court.

Having reviewed the record, we agree with the Commonwealth that the trial court's orders denying Appellant's dismissal motions were well-reasoned and appropriate. In denying Appellant's third and final motion to dismiss, the court stated the following:

> The Court has twice found that the Commonwealth failed in its duty to conduct a thorough review of its files to insure that all materials were properly disclosed. However, in these most recent documents, the Court does not find that the information fell within

9

the scope of RCr 7.24 or *Brady v. Maryland*, 373 U.S. 83 (1963) . . . . . The Court therefore finds no discovery violation. It is of the utmost importance that [Appellant] be able to receive a fair trial and have his due process rights vigorously defended. The Court notes that all of the information at issue is now disclosed prior to the next-scheduled trial date for [Appellant]. The Court further would grant a motion to continue if defense counsel believes it needs additional time to prepare in light of the evidence disclosed in this case.

The trial court also ordered that defense counsel have access to the entire police file in this case. That is an extraordinary remedy. We addressed a similar issue in *Pettway*:

[Appellant] has already received appropriate judicial remedies in the form of a mistrial and exclusion of evidence. To pile on would be nothing but arbitrary. And such action would raise significant separation-of-powers concerns. While we acknowledge the observation of Chief Justice Palmore that "[s]ometimes, as Holmes remarked, because the constable blundered the criminal must go free, that being the most effective method of helping the constable not to blunder the next time," *Reid v. Cowan*, 502 S.W.2d 41, 42 (Ky. 1973), this is not one of those times. There was no blunder that could not be appropriately addressed, as the trial court did here, under our rules of procedure.

*Pettway*, 470 S.W.3d at 712.

Like in *Pettway*, the discovery violations that occurred in the present case were properly addressed by the trial court. Any prejudice that may have occurred most certainly does not warrant the dismissal of the indictment.

### Closing Argument

For his final argument, Appellant contends that the trial court erroneously limited defense counsel's closing argument discussion of an internal investigation into the handling of this case. Appellant asserts that this information was critical to his defense that this case was the product of an

10

"overzealous prosecution and tunnel-vision investigation where leads were not followed and exculpatory evidence was disclosed years after the crime occurred." Some additional background information is necessary.

The investigation at issue here was an internal investigation ordered by the Jefferson County Commonwealth's Attorney that specifically targeted the handling of discovery by former Assistant Commonwealth's Attorney Tom Van De Rostyne. Mr. Van De Rostyne was actively involved in Appellant's case before and after the indictment. He was subsequently removed from the case in December 2012, which was two years before Appellant's trial. The investigation into his handling of discovery was still pending during Appellant's trial.

It is critical to note that the defense discussed the investigation during opening statement and during its questioning of Attorney Coffey. The Commonwealth did not object to these instances. However, near the end of trial, the Commonwealth objected to any additional references to the investigation on the basis that it was irrelevant. The Commonwealth also requested that the court strike defense counsel's earlier remarks, and requested that the jury be admonished not to consider those statements. The trial court declined to strike the evidence or admonish the jury, but ordered that there be no additional references to the internal investigation.

Subsequently, however, the trial court allowed defense counsel to briefly question Attorney Van De Rostyne concerning his knowledge of the investigation. The court also instructed the jury that they were not to consider

11

Van De Rostyne's testimony on this issue as substantive evidence of the defendant's case-in-chief.

Prior to closing arguments, the parties sought additional clarification whether the defense could discuss the internal investigation. The court ruled that the investigation could be discussed in closing as relevant to Van De Rostyne's alleged bias, but not for any other purposes. Accordingly, Appellant informed the jury during closing that Van De Rostyne was under investigation and that they could use that information when assessing his credibility as a witness.

Appellant specifically argues that he should have been able to further develop his discussion of the internal investigation concerning Van De Rostyne during closing argument in order to demonstrate how the investigation of the murder case against Appellant had been mishandled, instead of being limited to attacking Van De Rostyne's credibility.

In support of his argument, Appellant cites *Crane v. Kentucky*, 476 U.S. 683 (1986). In that case, the trial court excluded testimony concerning the circumstances of the defendant's confession on the ground that the testimony pertained solely to the issue of voluntariness. This Court affirmed the trial court's decision. The U.S. Supreme Court reversed and held that "evidence about the manner in which a confession was obtained is often highly relevant to its reliability and credibility" and that there was no "rational justification for the wholesale exclusion of this body of potentially exculpatory evidence[.]" *Id.* at 691. The issue in the present case is clearly distinguishable from *Crane*.

12

Unlike the confession at issue in *Crane*, neither the testimony nor the additional references concerning the investigation were introduced by the prosecution as evidence against the accused. Also, the defendant in *Crane* introduced the excluded evidence by avowal which included "testimony from two police officers about the size and other physical characteristics of the interrogation room, the length of the interview, and various other details about the taking of the confession." *Id.* at 686. In contrast, Appellant has failed to indicate what specific evidence he was precluded from introducing because of the ineptness of the investigation that defense counsel had not already addressed in the earlier stages of trial. There was no error here.

## Conclusion

For the foregoing reasons, we hereby reverse the judgment of the Jefferson Circuit Court on the intimidating a participant in the legal process conviction. We affirm the court's judgment on the murder conviction.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Karen Shuff Maurer
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Dorislee J. Gilbert
Special Assistant Attorney General