# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JUNE 15, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2016-SC-000392-TG
(2015-CA-001956-MR)

DATE 7/6/17 Kim Redmon, DC

STEVEN PETTWAY        APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.       HONORABLE ANGELA MCCORMICK BISIG, JUDGE
NOS. 11-CR-003052 AND 11-CR-003052-002

COMMONWEALTH OF KENTUCKY        APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Appellant, Steven Pettway, appeals from an order of the Jefferson Circuit Court denying his motion for a new trial. Appellant's motion was based upon the post-trial disclosure of a police report containing statements of Princess Bolin, a key witness who testified against Appellant at his murder trial. We agree with the trial court that there is not a reasonable possibility that the newly discovered information, if available at the time of the trial, would have had an appreciable impact on the result of the trial. Consequently, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2013, Appellant was convicted for the 2009 murder of Troya Sheckles. We affirmed the murder conviction in *Pettway v. Commonwealth*, 470 S.W.3d

706 (Ky. 2015).[1] In that decision, we provided the following summary of the case:

> Troya Sheckles was shot and killed in Shelby Park in Louisville around 7:30 p.m. on March 23, 2009. Several people saw the shooting, and they all gave largely consistent descriptions of the shooter as being a male in dark clothing with a bandana tied around his face.
>
> . . . .
>
> The Commonwealth's theory of the case was that Pettway killed Sheckles at Dejuan Hammond's direction to prevent her from testifying in the upcoming murder trial of his younger brother, Lloyd Hammond. Sheckles had witnessed the killing of William Sawyers in her home in 2006 and had identified Lloyd Hammond as the killer. Pettway was friends with the Hammonds, and the then-sixteen-year-old Pettway looked up to the much older Dejuan Hammond as a sort of mentor. The Commonwealth's evidence showed, among other things, that Pettway and Dejuan Hammond knew Sheckles was the essential witness for the Commonwealth in Lloyd Hammond's upcoming murder trial and had stashed a 9–mm pistol (the same kind used in Sheckles's shooting) at a friend's house about a month before the murder. There was also testimony about numerous statements made by Pettway following the murder admitting that he had shot Sheckles so that she could not testify against Lloyd Hammond.

*Id.* at 707–08.

---

[1] In the same decision, we reversed Pettway's conviction for intimidating a witness.

2

In a separate trial, Dejuan Hammond was also convicted of Sheckles' murder.[2] One of the witnesses who testified at Appellant's trial was Dejuan Hammond's girlfriend, Princess Bolin. Bolin had told police that she was at Shelby Park with a friend when Sheckles was killed and that she had seen Appellant commit the crime. When asked at Appellant's trial to repeat what she had seen, Bolin balked. The incriminating assertion was then presented to the jury through the prior statement she had given to the police.

During the appeal of Appellant's conviction to this Court, his attorney received notice from the prosecutors that Bolin had made a different, and previously undisclosed, pre-trial statement to police detective Roy Stalvey. The failure to make a more timely disclosure of Bolin's other statement appears to have been inadvertent. It was uncovered during the subsequent trial of codefendant Dejuan Hammond.

In that statement, contrary to what was presented at Appellant's trial, Bolin denied knowing anything about Sheckles' murder. She told Detective Stalvey that she was with Dejuan Hammond buying shoes at the Jefferson Mall when Sheckles was murdered. Although this belatedly-disclosed statement provides an alibi for Dejuan, it does not exonerate Appellant.[3] Nevertheless, it would have been a useful impeachment tool for undermining the trial testimony that Bolin saw Appellant shoot Sheckles. The Commonwealth

---

[2] See *Hammond v. Commonwealth*, 2016 WL 3371054 (Ky. 2016).

[3] As noted below, the newly-disclosed statement tended to exculpate Hammond. Because of its late discovery in the midst of his trial, a mistrial was declared in that proceeding.

3

conceded that Appellant should have received the report of the statement prior to his trial.

Based upon the post-trial disclosure of Bolin's prior statement to police, Appellant filed a motion for a new trial pursuant to RCr 10.02 and RCr 10.06(1), citing the report as newly discovered evidence. Appellant alleged that the Commonwealth's failure to provide the report prior to trial violated his due process rights, his right to confront witnesses, and his right to present a defense as provided by the Sixth and Fourteenth Amendments of the United States Constitution and Sections 2, 11, and 13 of the Kentucky Constitution. Appellant also alleged that the Commonwealth's failure to disclose the report violated his due process rights to exculpatory information under *Brady v. Maryland*, 373 U.S. 83 (1963).

The trial court denied the motion for a new trial after concluding that a more timely pre-trial disclosure of Bolin's inconsistent statement would not have affected the jury's decision to convict Appellant of murder. Appellant appealed the ruling to the Court of Appeals. We granted transfer of the case to expedite the disposition of the matter and because the appeal of Dejuan Hammond's conviction for Sheckles' murder was pending before us at the time.

## II. ANALYSIS

Appellant contends that the trial court abused its discretion by denying his motion for a new trial and by rejecting his *Brady* argument. A trial court may grant a new trial "for any cause which prevented the defendant from having a fair trial, or if required in the interest of justice." RCr 10.02(1).

4

"Granting a new trial is within the discretion of the trial court, and such is disfavored when the grounds are newly discovered evidence which is merely cumulative or impeaching in nature." *Foley v. Commonwealth*, 425 S.W.3d 880, 888 (Ky. 2014) (citing *Epperson v. Commonwealth*, 809 S.W.2d 835 (Ky. 1990)). To warrant a new trial, the newly discovered evidence "must be of such decisive value or force that it would with reasonable certainty, change the verdict or that it would probably change the result." *Jennings v. Commonwealth*, 380 S.W.2d 284, 285–86 (Ky.1964) (internal quotation and citation omitted).

A *Brady* violation consists of three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Goben v. Commonwealth*, 503 S.W.3d 890, 914 n. 21 (Ky. 2016) (citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). We review the factual findings associated with the trial court decision under the clearly erroneous standard, CR 52.01; based upon those findings of fact, we determine *de novo* if the deprivation of the newly-discovered evidence constituted a *Brady* violation. *Commonwealth v. Parrish*, 471 S.W.3d 694, 697 (Ky. 2015) (citing *Commonwealth v. Bussell*, 226 S.W.3d 96, 100 (Ky. 2007)).

In denying Appellant's motion for a new trial, the trial court addressed the principal issues as follows:

Both parties acknowledge that many of the witnesses at the trial of [Appellant] were uncooperative and ultimately were impeached based upon the use of prior out-of-court statements. Princess Bolin could clearly be characterized as such an uncooperative witness. The victim, Troya Sheckles, was at a park with long-time-friend, Donteze Hurt, at the time of the murder. At Pettway's trial, Hurt testified that he witnessed the shooting of Troya Sheckles. He further stated the bandana covering the man's face slipped down. Donteze Hurt positively identified the [Appellant] as the shooter. Further, the police recovered nine millimeter shell casings at the scene of the shooting. A ballistics expert testified that the shots were fired from a nine millimeter semi-automatic gun. Witness Janice Bolin, Princess Bolin's mother, testified that Defendant Dejuan Hammond and [Appellant] had stored a nine millimeter handgun in her back yard.

At trial the Commonwealth further established that Troya Sheckles was a critical witness in the murder case of Defendant, Dejuan Hammond's, brother, Lloyd Hammond. Dejuan Hammond was present and in the courtroom when Ms. Sheckles was sworn to reappear as a witness in the Lloyd Hammond murder trial. Prior to Ms. Sheckles appearance, the murder indictment had been dismissed against Lloyd Hammond.

Conversely, the defense's position is that the case against [Appellant] contained little physical evidence. They note that Princess Bolin was one of four witnesses the Commonwealth called at trial to testify about events leading up to and following the shooting. Defense counsel argues that the statement of Princess Bolin, disclosed in the trial of Dejuan Hammond, could have been used to impeach Bolin and attack her credibility during her testimony. Further, defense argues had Bolin been more fully impeached, the jury could have made a decision to reject her testimony.

Defense also believes the missing letter could have been used to impeach Kayonia Thomas who testified that she saw [Appellant] and Hammond driving near Shelby Park at the time of the shooting.

While the Court agrees this evidence may have provided [Appellant] with another avenue to impeach the statements of Princess Bolin regarding the crime, that statement only provided an alibi for Dejuan Hammond, and was not supported by other witnesses or information in the case. The newly discovered evidence contains information very remote from the issues related to [Appellant].

6

> To any observer of [Appellant's] trial, Princess Bolin was already a witness frustratingly rife with a plethora of contradictions. Kayonia Thomas' testimony was not related to the investigative letter, and she could not realistically be impeached with one of Princess Bolin's out of court statements. The Court not only finds that the new evidence here was not likely to change the outcome of the trial, but for the above reasons, would not have made any significant difference in the trial of this case. There was a substantial amount of information involved in this trial. Given the totality of the other evidence presented, as well as the already inconsistent nature of Bolin's testimony, the Court does not find the information would have changed the outcome of the jury's decision to convict [Appellant] on the one count of murder.

Trial Court's Nov. 20, 2015, Order, pgs 5-7.

We agree with the trial court's assessment. The substance of Bolin's undisclosed statements provided Dejuan Hammond with an alibi for the shooting, but it did not exculpate Appellant. It would have aided Appellant's effort to impeach Bolin's other statement, but as the trial court noted, she had already been shown to be an uncooperative, contradictory, and inconsistent witness. Given the level of impeachment material already available to discredit Bolin, this new information would have been only marginally helpful.

Moreover, since Sheckles was apparently killed to prevent her from testifying against Lloyd Hammond, the credibility of Bolin's initial disclaimer of any knowledge about the shooting is burdened by the appearance that she was falsely distancing herself from the crime to avoid a similar fate. The exculpatory effect of the statement would no doubt be blunted by the Commonwealth's ability to point out Bolin's incentive to deny knowledge of the murder.

7

In summary, we agree with the trial court that Appellant is not entitled to a new trial under the applicable standard for obtaining relief under RCr 10.02 in that the new information was not "of such decisive value or force that it would with reasonable certainty" have changed the verdict, or "would probably change the result if a new trial should be granted." *Jennings*, 380 S.W.2d at 285–86.

For similar reasons, Appellant is not entitled to relief under a *Brady v. Maryland* analysis. The evidence satisfies the first two prongs of the *Strickler v. Greene* test because it was useful to discredit Bolin and was erroneously withheld; nevertheless, Appellant fails to satisfy the third prong of the inquiry as he was not substantially prejudiced by the Commonwealth's failure to timely turn over the Bolin interview information. *Goben*, 503 S.W.3d at 914.

## III. CONCLUSION

For the foregoing reasons, the judgment of the Jefferson Circuit Court denying Appellant's motion for a new trial is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Euva Denean Blandford
Amy Robinson Staples
Assistant Public Advocate
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

James Coleman Shackelford
Assistant Attorney General