COMMONWEALTH of Kentucky, Appellant

v.

Adrian PARRISH, Appellee

2013–SC–000830–DG

Supreme Court of Kentucky.

RENDERED: SEPTEMBER 24, 2015

Counsel for Appellant: Jack Conway, Attorney General of Kentucky, Anna Marie Roberts–Smith, Assistant Attorney General.

Counsel for Appellee: David W. Thomas.

## OPINION OF THE COURT BY JUSTICE KELLER

Following a bench trial, the district court convicted Adrian Parrish of driving under the influence, first offense. Parrish appealed to the circuit court and argued a *Brady*[1] violation. The circuit court reversed the conviction, and the Court of Appeals, on discretionary review, affirmed based on the circuit court's findings and conclusions. This Court granted discretionary review, and for the reasons stated herein, we reverse the opinion of the Court of Appeals and reinstate the district court's judgment.

### I. BACKGROUND.

At 12:04 a.m. on November 18, 2010, Officer Cobb of the Nicholasville Police Department stopped Adrian Parrish's vehicle after Parrish did not stop completely at two stop signs and failed to stay to the right side of the road. Upon approaching the vehicle, Officer Cobb smelled the odor of alcohol coming from inside, and, after inquiry, Parrish volunteered that he had consumed three drinks within the thirty minutes before being stopped. With this, Officer Cobb asked Parrish to step out of his vehicle to perform field sobriety tests. Parrish performed the one-legged stand and the heel-to-toe walk tests with some proficiency, yet Officer Cobb noted signs

---

1. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

of impairment with both. Officer Cobb then administered a preliminary breath test (PBT) and showed the level reading to his police cruiser's dashboard video recorder. Officer Cobb also noted on the citation that "PBT detected the presence of alcohol" but did not record the numerical level. Based on the totality of Parrish's driving and the tests, Officer Cobb placed Parrish under arrest for suspected driving while under the influence of alcohol and transported him to the Jessamine County Detention Center.

At the station, Officer Cobb performed an Intoxilyzer breath alcohol level test on Parrish at 12:49 a.m.; the result was 0.086. Officer Cobb noted this result as well as the existence of the dashboard video on the citation and charged Parrish with driving under the influence, first offense.

Prior to trial, Parrish's attorney made an informal request to obtain a copy of the dashboard video, but police told him that the video did not exist. Parrish's attorney did not make a formal discovery request.

At the bench trial, Officer Cobb, the only witness, testified that he did not know why the video was unavailable. He testified that his cruiser was equipped with a video recording system, which was automatically set to begin recording when he activated his emergency lights. Officer Cobb stated that it is standard department practice to note the dashboard video on the citation and for the evidence clerk to take responsibility for delivering the video if it is requested. Officer Cobb was unaware that the video did not exist until the day of trial and even stated that he was curious as to its whereabouts.

On cross examination, Officer Cobb reiterated that the PBT showed the presence of alcohol and that he flashed the result to his dashboard video recorder, but he could not recall the exact numerical result. Officer Cobb admitted that it was possible that

the level was less than 0.08. Parrish's attorney attempted to lay a foundation for an extrapolation defense through Officer Cobb's testimony. The district court allowed Officer Cobb to testify concerning the general principles of alcohol absorption into the body but sustained the Commonwealth's objections as to any scientific testimony.

During closing arguments, Parrish's attorney submitted that his client's extrapolation defense was hampered by the missing dashboard video. However, he also conceded that he believed that the video was not destroyed purposefully by police and that Officer Cobb dealt fairly with Parrish.

The district court found that the Commonwealth had met its burden of proving Parrish was per se driving under the influence according to Kentucky Revised Statute (KRS) 189A.010(1)(a). The court stated that the majority of Parrish's arguments, including any extrapolation arguments, went toward defending against a conviction under (1)(b) or the general "driving under the influence of alcohol" theory of prosecution. The court explained that without clear scientific evidence as to the extrapolation defense, it could not make a conclusion that Parrish's blood alcohol content was under the legal limit when he was stopped. The district court made this finding under the totality of the evidence presented and with full awareness of the missing video. Finally, the court commended both Officer Cobb and Parrish for their honesty.

On appeal to the circuit court, Parrish argued that the PBT result was admissible and potentially exculpatory evidence. He further contended that police either destroyed or failed to preserve the only record of the result: the dashboard video.

Parrish argued that this amounted to a *Brady* violation.

The circuit court agreed with Parrish that the failure to preserve the PBT level was a *Brady* violation, finding that the PBT result "was, at the very least, destroyed inadvertently outside normal practices." However, in response to the Commonwealth's motion to reconsider, the circuit court specifically stated, "I don't know what happened to the evidence, but I think that [Officer Cobb] intentionally did not record the evidence when he saw it was below .08. And that is why I think it constituted bad faith." The circuit court reversed the district court and remanded the case for a new trial, with the recommendation that the district court conduct a *Daubert*[2] hearing.

The Court of Appeals affirmed the circuit court's finding of a *Brady* violation, and this Court granted discretionary review. For the following reasons, we reverse the opinion of the Court of Appeals and reinstate the district court's judgment.

## II.  STANDARD OF REVIEW.

■  The findings of fact by the trial court following a bench trial "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Kentucky Rule of Civil Procedure (CR) 52.01; *see also Patmon v. Hobbs,* 280 S.W.3d 589, 593 (Ky. App. 2009). Keeping that in mind, this Court reviews *de novo* whether the conduct of the Commonwealth pertaining to the evidence at issue constitutes a *Brady* violation. *Commonwealth v. Bussell,* 226 S.W.3d 96, 100 (Ky. 2007).

**2.**  *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469

## III.  ANALYSIS.

■  The Commonwealth essentially argues that the circuit court abused its discretion as a reviewing court and erroneously found a *Brady* violation. We agree.

■  In *Brady,* the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Arizona v. Youngblood,* the Supreme Court clarified what a defendant must prove when the government fails to collect or preserve evidence, holding, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). In other words, government culpability is irrelevant when the Commonwealth withholds plainly exculpatory evidence, but when the Commonwealth merely fails to collect or preserve evidence, as in the case here, the defendant must prove bad faith. When this Court adopted *Youngblood,* we added that "negligence simply does not rise to the level of bad faith...." *Collins v. Commonwealth,* 951 S.W.2d 569, 573 (Ky. 1997).

The circuit court's finding of bad faith was erroneous because it was not supported by the record. First, the district court essentially made a finding to the contrary when it expressly began its ruling with a compliment to Officer Cobb's honesty.

(1993).

Second, there was no evidence before the district court that Officer Cobb or the Nicholasville Police Department failed to preserve the dashboard video or the PBT result in bad faith. Officer Cobb testified that he was aware his cruiser was equipped with a video system and that it was set to automatically record. He recalled that he purposefully showed the numerical result of the PBT to the dashboard camera in order to preserve a record of it. Furthermore, he noted the existence of the dashboard video on the citation. Officer Cobb testified that the evidence clerk then should have taken responsibility for preserving and later providing the video. In fact, Officer Cobb was unaware until trial that the video did not exist and was curious as to why it was not present.

Third, Parrish's attorney did not argue to the district court that Officer Cobb acted in bad faith; he specifically stated that he did not believe that the video was purposefully destroyed and felt that Officer Cobb was fair to Parrish. Finally, no other witnesses were called to trace the custody of the video; therefore, neither we nor the lower courts should speculate as to the cause of its apparent non-existence.

■ Additionally, *"Brady* only applies to 'the discovery, *after trial,* of information which had been known to the prosecution but *unknown to the defense."'* Bowling v. Commonwealth,* 80 S.W.3d 405, 410 (Ky. 2002) (emphasis in original) (quoting *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). Consequently, when such information is disclosed at trial and the defense actively cross-examines on it, there is no *Brady* violation. *Nunley v. Commonwealth,* 393 S.W.3d 9, 13 (Ky. 2013).

■ Here, the non-existence of the dashboard video was well known to Parrish before trial. His attorney made an informal request for a copy before trial and was told that the video did not exist. Moreover, the issue was fully explored at trial. Parrish took full advantage of cross-examining Officer Cobb on his standard procedure of showing a PBT result to the dashboard camera and noting the existence of the video on the citation. Finally, the district court was fully aware of the missing evidence when it made its ruling. *"Brady* does not give a defendant a second chance after trial once he becomes dissatisfied with the outcome if he had a chance at trial to address the evidence complained of." *Id.*

Finally, Parrish's argument that he only discovered that the video contained *Brady* material at trial is, likewise, not persuasive. Officer Cobb noted that a PBT was performed on the citation. Parrish, therefore, knew the test was performed and was free to make a discovery request for any record of the results. Parrish chose not to do so. Furthermore, even if we assume Parrish did not become aware of this missing evidence until trial, the proper procedure would have been to request a continuance or, at least, a recess. *Id.* He did neither. Therefore, because Parrish did not avail himself of the opportunity to seek redress before the district court, he is foreclosed from doing so now.

Parrish was well aware of both the PBT and the dashboard video before trial and the district court found no evidence of bad faith; accordingly, the circuit court and the Court of Appeals erred when they found a *Brady* violation.

## IV. CONCLUSION.

For the reasons stated above, we reverse the Court of Appeals and reinstate the judgment of the district court.

All sitting. Minton, C.J., Abramson, Barber, Cunningham, Keller and Venters, JJ., concur. Noble, J., concurs by separate opinion.

NOBLE, J., CONCURRING SEPARATELY:

In this case, the circuit court reversed the district court, in part, by finding that the police acted in bad faith in not recording the results of the preliminary breath test. But the circuit court was sitting as an appellate court and could not properly make factual findings contrary to those made by the district court. As the Court notes, the circuit court, sitting as the first appellate court, made a specific finding that he believed that the officer intentionally did not record the evidence when he saw that the blood alcohol reading was less than .08, and this was the basis for his finding that the officer was not acting in good faith. Appellate courts are not independent finders of fact. If the only basis for reversing the district court was the circuit court's finding that the officer acted intentionally to avoid recording a low blood alcohol level, then that is an independent fact found by the circuit court, which it cannot do in an appellate capacity. While circuit courts do not sit as appellate courts all that frequently, when they do, they must recall that they are not finders of fact.