RENDERED:  AUGUST 14, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000159-MR

AUSTIN MOORE                                                                APPELLANT

v.          APPEAL FROM FRANKLIN CIRCUIT COURT
            HONORABLE PHILLIP J. SHEPHERD, JUDGE
            ACTION NO. 17-CR-00250

COMMONWEALTH OF KENTUCKY                                       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, TAYLOR, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Austin Moore appeals from a judgment of the Franklin

Circuit Court sentencing him to eight years of imprisonment after a jury found him

guilty of operating a motor vehicle under the influence of alcohol/drugs, wanton

endangerment in the first degree, and manslaughter in the second degree.  Moore

raises five arguments:  1) the trial court abused its discretion by admitting into

evidence the video from Alyssa Hutcherson's cell phone; 2) the trial court erred by permitting Deputy Daniel Wills to testify about his previous encounter with Moore; 3) the trial court erred in denying his motion for a new trial; 4) the trial court erred by denying Moore's request to call a retired police officer as an expert witness; and 5) the trial court abused its discretion by instructing the jury on lesser-included offenses. We conclude there was no error and affirm.

In June 2017, Moore socialized at his family farm with his friends, Alyssa Hutcherson and Brittany Sutcliffe. It is uncontested that all three drank alcohol and smoked marijuana. In the early hours of the morning, the three went to a convenience store to get cigarettes and left for the store in Moore's vehicle. Moore drove, Hutcherson sat in the front seat, and Sutcliffe sat in the backseat. Sutcliffe testified Moore was driving "fast" and Hutcherson told him to slow down. Moore drove off the road and struck a tree, killing Hutcherson.

Another motorist, Andrew Wilson, stopped at the accident scene and called 911. Wilson testified Moore smelled of alcohol and repeatedly said he had messed up and should not have been driving so fast. When asked to describe Moore's conduct, Wilson described Moore as bouncing around "like he just won the lottery." Wilson testified "any sane person" could have seen that Moore was "under the influence of something."

Among the first responders to arrive was Deputy Daniel Wills (also sometimes referred to as "Willis" in the record). Like Wilson, Deputy Wills testified that he smelled the strong odor of alcohol on Moore. Without objection, Deputy Wills also testified that Moore's pupils were dilated, and his eyes were red, watery, and bloodshot, which was indicative of marijuana usage.[1] When Deputy Wills asked Moore if he had been drinking Moore admitted he had had two drinks and smoked marijuana. According to Deputy Wills, Moore failed multiple field sobriety tests (FSTs) and so the deputy concluded Moore was impaired/under the influence.[2] Finally, Deputy Wills testified that he recently observed Moore driving before the fatal accident and told him that either he would have to be put in a body bag or he would be going to prison for killing someone.

Blood testing showed Moore had amphetamines in his blood, but the precise level could not be determined by current testing methods. Moore's blood

---

[1] Even though Deputy Wills offered no scientific basis to link, for example, bloodshot eyes and marijuana usage, Moore did not object. Thus, we will not explore the issue beyond noting some courts and commentators have criticized linking bloodshot eyes with suspicion of criminal activity. *See*, *e.g.*, Joseph B. Suhre and Wilbur M. Zevely, *Kentucky Driving Under the Influence Law* § 3.9 (2019-2020 ed.) ("Police allegations of bloodshot or watery eyes present little practical benefit to the state's case. These conditions can occur for so many reasons other than intoxication that their contribution to the state's case is minimal. These days and times few people have eyes that are not bloodshot. It is a part of life."); *Ferris v. State*, 735 A.2d 491, 510 (Md. 1999) (holding that "[i]n the absence of any testimony or scientific evidence as to some direct, observable correlation between eyes that are bloodshot, even extremely so, and drug usage or, intuitively less likely, drug possession, we find this fact to carry little, if any, weight").

[2] Our Supreme Court recently declined to find palpable error when an officer described FSTs as "tests" which a defendant "failed." *Iraola-Lovaco v. Commonwealth*, 586 S.W.3d 241, 246-47 (Ky. 2019).

also had an alcohol level of .011, which equates with approximately .027 at the time of the accident. Dr. Gregory Davis, M.D., from the University of Kentucky College of Medicine, testified without objection as an expert on behalf of the Commonwealth. According to Dr. Davis, Moore's alcohol level roughly corresponds with having had one drink. Dr. Davis testified, again without objection, that Moore's blood level of 6 ng/ml, plus or minus 1 ng/ml, of Delta-9 THC (the active ingredient in marijuana) would have caused him to suffer some degree of cognitive impairment.[3] Also, Dr. Davis testified that combining alcohol and marijuana is akin to adding lighter fluid to a fire.

Moore offered his own expert, Mike Ward, a retiree from the medical examiner's office in Frankfort with a master's degree in toxicology and one in drug chemistry. Ward testified that "all bets were off" regarding a firm correlation between impairment and the level of THC in a person's blood. Ward agreed with the proposition that a person with 2 ng/ml of THC could be more impaired than someone with 10 ng/ml. However, when asked if he agreed that 6 ng/ml was a significant level of THC, Ward responded that studies have shown such a level can have an impact on driving. Ward also did not disagree with Dr. Davis's testimony

---

[3] A forensic scientist specialist also testified as an expert that Moore's level of THC was considered "significant." When the Commonwealth asked if she knew what level of THC produced impairment, she responded-- without objection--that "research indicates anything above a one to two nanograms per milliliter." As with the testimony of Dr. Davis, there was no objection to the admission of the testimony as to the effect of THC on the degree of impairment and it is not an issue raised on appeal. Therefore, it is not addressed in this opinion.

that at the time of the collision, Moore's THC level would have been at least 6 ng/ml, which would have affected Moore's central nervous system to some degree. Finally, Ward testified that combining alcohol, marijuana, and amphetamines increases the risk of adversely impacting the ability to drive.

Justin Benton testified that later in the morning of the crash, he discovered Hutcherson's cell phone at the accident scene. Benton said he did not view or edit the phone's contents before giving it to Hutcherson's father. Hutcherson's father testified that he gave the phone to his sister, who discovered on it a ten-second-long video filmed the night of the accident. Hutcherson's father and sister each denied having altered the phone/video. After a couple of days, Hutcherson's father gave the phone to the sheriff's office.

That video shows Moore sitting in the driver's seat leaning his face toward an unidentifiable object in his hands. There are no audio references to drugs nor can any be seen. Nonetheless, the Commonwealth posited that the video showed Moore about to snort Adderall, an amphetamine for which he had a prescription. Over Moore's objection, the video was played to the jury. An empty Adderall bottle was found in Moore's vehicle. Sutcliffe testified she did not see Moore consume Adderall that night, though she described him as being "hyper."

Moore objected to instructing the jury on lesser-included offenses to the murder charge, but the trial court instructed the jury on manslaughter in the

second degree and reckless homicide.  The jury found Moore guilty of DUI, wanton endangerment in the first degree, and manslaughter in the second degree and recommended a total of eight years' imprisonment.

Moore filed a motion for a new trial, arguing the Commonwealth improperly failed to preserve recordings of Sutcliffe's interviews at the Franklin County Sheriff's Office.  The trial court denied the motion for a new trial and sentenced Moore in accordance with the jury's recommendations, after which he filed this appeal.

The Commonwealth argues that Moore's brief should be stricken because it does not comply with Kentucky Rule of Civil Procedure (CR) 76.12. Although we agree that Moore's brief contains minimal citations to the record and his arguments are, for the most part, not well developed, "dismissal based upon a failure to comply with CR 76.12 is not automatic." *Baker v. Campbell County Bd. of Educ.*, 180 S.W.3d 479, 482 (Ky.App. 2005) (citation omitted).  We decline to harshly penalize Moore by striking the brief.  We strongly prefer to decide appeals on the merits "whenever possible[,]" *C.M.C. v. A.L.W.*, 180 S.W.3d 485, 490 (Ky.App. 2005) (citation omitted), and, therefore, review Moore's issues on the merits.

Moore argues that the trial court abused its discretion by permitting the Commonwealth to play the video from Hutcherson's phone.  We review a trial

court's evidentiary decision for abuse of discretion, which focuses on whether the decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Engles v. Commonwealth*, 373 S.W.3d 456, 457 (Ky.App. 2012).

Moore contends the Commonwealth did not present a sufficient chain of custody. Kentucky Rule of Evidence (KRE) 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Or, in other words, "a proper foundation requires the proponent to prove that the proffered evidence was the same evidence actually involved in the event in question and that it remains materially unchanged from the time of the event until its admission." *Thomas v. Commonwealth*, 153 S.W.3d 772, 779 (Ky. 2004) (citations omitted). The Commonwealth presented unchallenged testimony that the phone was Hutcherson's and the video was found on her phone. The question is whether the video was "materially unchanged from the time of the event until its admission." *Id.* That issue involves determining whether the Commonwealth presented a sufficient chain of custody.

"[A]n unbroken chain of custody is generally unnecessary" as "[a]ny gaps go to the weight, rather than the admissibility of the evidence, and the proponent need only demonstrate a reasonable probability that it has not been altered in any material respect." *Id.* at 781 (citations omitted). The

Commonwealth presented evidence showing where, when, and how the phone was found, along with denials from those who possessed the phone that they had altered it or its contents.

There is not a perfect chain of custody, but the chain's gaps go to the video's weight, not its admissibility. Indeed, "the mere fact that evidence has been misplaced, insecurely kept, or unstored for a significant period of time is not *per se* fatal to admissibility." *Id.* (citation omitted). Moore offers nothing besides the theoretical possibility that the video might have been edited. "Speculation and innuendo are not proper bases for an appellate court to reverse a criminal conviction." *Chapman v. Commonwealth*, 265 S.W.3d 156, 173 (Ky. 2007).

Comparing this case to the significantly more suspect chain of custody/identification concerns in *Thomas* shows that the trial court did not abuse its discretion. In *Thomas*, a two-year-old ingested Valium and was then fed a mixture of milk and castor oil from a soda bottle. *Thomas*, 153 S.W.3d at 775. The child was taken to a hospital where testing revealed the presence of Valium and cocaine. *Id.* Five days later, a bottle from the same soda brand containing white residue was found near where the child was fed. *Id.* at 778. The bottle was stored in an attic until given to the prosecutor six days prior to trial. *Id.* The bottle tested positive for cocaine. The defendant, charged with giving the child cocaine, argued the bottle was inadmissible.

Our Supreme Court affirmed the trial court's decision to admit the bottle into evidence, holding the Commonwealth "sufficiently linked the bottle to the crime" by presenting evidence showing "a reasonable probability that the bottle admitted into evidence was the instrumentality by which cocaine was introduced" into the child. *Id.* at 780. Here, the video was found after the crime sooner than was the bottle, turned over to the authorities sooner, and was not indistinguishable and ubiquitous like a soda bottle. We find no abuse of discretion in the trial court's rejection of Moore's chain of custody/identification arguments.

Moore also argues the Commonwealth did not satisfy the "best evidence" rule. KRE 1002 provides in relevant part that "[t]o prove the content of a . . . recording . . . the original . . . recording . . . is required, except as otherwise provided . . . ." Moore offers no evidence to contradict the testimony that the video played to the jury was taken unaltered from Hutcherson's phone, which was itself entered into evidence. KRE 1003(1) provides that a duplicate is admissible to the same extent as an original unless, among other things, "[a] genuine question is raised as to the authenticity of the original . . . ." Moore has not raised a genuine question as to the authenticity of the original video. Indeed, Moore cites to no analogous precedent to support his argument. Without belaboring the point, we conclude the Commonwealth did not violate the best evidence rule.

Moore next contends the video was inadmissible because it was irrelevant or, alternatively, its prejudicial value outweighed its probative value. The question is whether its prejudicial value substantially outweighed its probativeness. "An appellate court evaluating a trial court's balancing under KRE 403, must consider the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative force and its minimum prejudicial value." *Yates v. Commonwealth*, 430 S.W.3d 883, 897 (Ky. 2014).

Under KRE 402, relevant evidence is generally admissible while irrelevant evidence is not. Evidence is "relevant" under KRE 401 if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Thus, "[r]elevancy is established by any showing of probativeness, however slight." *Springer v. Commonwealth*, 998 S.W.2d 439, 449 (Ky. 1999). However, under KRE 403, relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of undue prejudice . . . ." KRE 401, 402, and 403 have a "very powerful tilt" towards admitting evidence. *Clark v. Commonwealth*, 567 S.W.3d 565, 575 (Ky. 2019) (citation omitted).

Moore argues that the video did not have the tendency to make any fact in consequence to the determination of the matter more or less probable and,

therefore, is not relevant and not admissible. We agree with the Commonwealth that the jury could have inferred the video shows Moore about to snort Adderall.

Amphetamine usage prior to/while driving, especially combined with marijuana and alcohol consumption, is evidence of wantonness, a required element of wanton endangerment under Kentucky Revised Statute (KRS) 508.060 and manslaughter in the second degree under KRS 507.040. *See*, *e.g.*, *Berryman v. Commonwealth*, 237 S.W.3d 175, 179 (Ky. 2007) (footnote omitted) (holding in a wanton murder case that, even though a chemist was unable to testify as to whether Xanax traces in a defendant's system meant the defendant was impaired at the time of a fatal crash, "[a] reasonable inference could be drawn that Berryman was impaired, at least somewhat, by the Xanax in his system"); *Doneghy v. Commonwealth*, 410 S.W.3d 95, 103 (Ky. 2013) (holding that "operating a vehicle in an intoxicated state is indicative of wantonness").

The video permitted the jury to infer that Moore snorted amphetamines. Ward testified that snorting Adderall would make its impact more immediate and pronounced, which heightens the video's relevancy and probative value. More importantly, Moore also has not shown that the video's prejudicial impact greatly outweighed its probative value. The video did not depict conduct so inherently distasteful that it "appeal[ed] to the jury's sympathies, arouse[d] its sense of horror, [or] provoke[d] its instinct to punish . . . ." *Richmond v.*

*Commonwealth*, 534 S.W.3d 228, 232 (Ky. 2017) (citation omitted).  We find no abuse of discretion regarding the video.

We note that while the video was damaging to the defense, there was other evidence of Moore's impairment at the time of the wreck.  Dr. Davis testified there is a multiplicative impact when alcohol and marijuana are combined.  Ward agreed combining those substances increases the risk of adversely impacting the ability to drive.  Moore also performed poorly on FSTs.  Though FSTs are arguably less useful in determining marijuana usage than alcohol usage, we agree with the Supreme Judicial Court of Massachusetts that "[t]he lack of scientific consensus regarding the use of standard FSTs in attempting to evaluate marijuana intoxication does not mean [they] have no probative value" since they may help establish "a driver's balance, coordination, mental acuity, and other skills required to safely operate a motor vehicle . . . ." *Commonwealth v. Gerhardt*, 81 N.E.3d 751, 754 (Mass. 2017).  There was testimony that Moore smelled of alcohol and Wilson testified that it was obvious Moore was under the influence.  *See Barnett v. Commonwealth*, 317 S.W.3d 49, 58-59 (Ky. 2010) (holding that lay witnesses may offer testimony based upon their observations that a person was intoxicated).  Finally, Sutcliffe described Moore as acting hyped up or hyper.

Moore next argues the trial court erred by allowing Deputy Wills to testify as to having told Moore not long before the accident that his driving would

cause him to be placed in a body bag or go to prison for killing someone. Moore cites only KRE 404(b), which, with some exceptions, renders inadmissible "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith."

As with the cell phone video, the challenged testimony of Deputy Wills consumed only a few seconds of a multi-day trial. The testimony was appropriately limited in scope as Deputy Wills did not elaborate on the encounter, such as by specifying how fast Moore was driving or any charges that stemmed from that encounter. In other words, Wills did not name any specific prior bad act.

Under KRS 501.020(3), a person acts wantonly "when he is aware of and consciously disregards a substantial and unjustifiable risk" that a result will occur. Deputy Wills' testimony that he had previously warned Moore of the calamitous consequences of speeding was relevant to show Moore consciously disregarded the known effects of driving too fast. Although Moore persistently argues in his brief that there was no evidence he was speeding, Sutcliffe testified Moore was driving "fast" and that Hutcherson had asked him to slow down but he "caught his speed back up." In short, we find no abuse of discretion in permitting the challenged testimony.

Turning to Moore's next argument, it is uncontested that Sutcliffe was interviewed multiple times prior to the trial. Her initial interview at the sheriff's

office soon after the accident was apparently not recorded by mistake and the video record of her second interview was accidentally recorded over. She was then interviewed twice by the Commonwealth Attorney's office (though Moore does not explicitly claim error regarding those interviews). Moore asserts his right to due process was violated by his not being able to view the initial interviews, thereby necessitating a new trial. We review a trial court's decision denying a motion for a new trial for abuse of discretion. *Winstead v. Commonwealth*, 327 S.W.3d 386, 403 n.40 (Ky. 2010).

"[G]overnment culpability is irrelevant when the Commonwealth withholds plainly exculpatory evidence, but when the Commonwealth merely fails to collect or preserve evidence . . . the defendant must prove bad faith." *Commonwealth v. Parrish*, 471 S.W.3d 694, 697 (Ky. 2015). *See also Kirk v. Commonwealth*, 6 S.W.3d 823, 826 (Ky. 1999) (citations omitted) ("Absent a showing of bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."). Negligence is insufficient to show bad faith. *Collins v. Commonwealth*, 951 S.W.2d 569, 573 (Ky. 1997).

Moore's conjecture to the contrary notwithstanding, it is not apparent that Sutcliffe's early interviews were truly exculpatory. Her testimony at trial was mixed, with some portions favorable to Moore (such as saying she did not see him

take Adderall) and some unfavorable (such as saying he drank alcohol, smoked marijuana, acted hyped up, and had driven fast). Moore has provided no reasonable basis to conclude Sutcliffe's early interviews were markedly different. Therefore, Moore must show bad faith to receive relief.

Inadvertent carelessness, such as occurred here, sounds in negligence, absent tangible evidence of nefariousness. Moore only argues that "although it has been claimed the failure to preserve the recordings was unintentional, the facts may suggest otherwise." Moore cites to no specific "facts" to "suggest otherwise." Moreover, Moore's counsel was apparently aware of the lack of interview tapes before trial and the Franklin County Sheriff testified about the lack of videos during the trial (outside the presence of the jury). Thus, there was not a *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) violation. *See Parrish*, 471 S.W.3d at 698. Finally, Moore's counsel had the opportunity to interview Sutcliffe prior to trial, thereby ameliorating any prejudice. Because Moore has presented only conjecture, he has not shown bad faith and so we find no abuse of discretion in the denial of the motion for a new trial.

Moore next contends the trial court erred by not permitting him to offer the testimony of a retired police officer about the condition of the road where the accident occurred. The trial court refused to allow the testimony because

-15-

Moore failed to comply with the pretrial order to timely disclose the expert witness to the Commonwealth and because the testimony would be cumulative.

Moore has not challenged the trial court's cumulativeness conclusion, so we may affirm on that basis alone. Second, it is uncontested that Moore failed to comply with the pretrial order regarding disclosure of experts. Moore's generic argument that fundamental fairness required permitting the expert to testify is insufficient to overcome the inherent discretion a trial court possesses to impose reasonable sanctions for discovery violations. *Jones v. Commonwealth*, 237 S.W.3d 153, 157 (Ky. 2007).

Moore's final argument is that the trial court abused its discretion by not permitting Moore to waive his right to have the jury instructed on lesser-included offenses. The Commonwealth generally is entitled to have the jury instructed on lesser-included offenses, even if a defendant objects. *See*, *e.g.*, *Parks v. Commonwealth*, 192 S.W.3d 318, 327 (Ky. 2006). Moore has not shown the Commonwealth agreed to join his "all or nothing" strategy. In fact, the Commonwealth tendered lesser-included offense instructions. We find no error in giving the challenged instructions.

For the reasons stated, the judgment of the Franklin Circuit Court is affirmed.

ALL CONCUR.


BRIEF FOR APPELLANT:

Robert Rowland
James E. Boyd
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

James P. Judge
Assistant Attorney General
Frankfort, Kentucky